IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RICHARD ERDMANN,<br><br>                Petitioner,<br><br>    vs.<br><br>EARL HOUSER,<br><br>                Respondent. | No. 3:19-cv-00287-JKS<br><br>MEMORANDUM DECISION |

Richard Erdmann, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Erdmann is in the custody of the Alaska Department of Corrections ("DOC") and incarcerated at Goose Creek Correctional Center. Respondent has answered, and Erdmann has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On January 17, 2013, Erdmann, along with co-defendants Taylor Smith, James Smith, and Kendra Tapia-Ruiz, was charged with first-degree robbery, second-degree burglary, second-degree assault, and second-degree theft in connection with a break-in at the home of Benjamin Gall and Amanda Swafford. On direct appeal of his conviction, the Alaska Court of Appeals recounted the following facts underlying the charges against Erdmann:

> The evidence at trial showed that a group of four men — Smith, Erdmann, a third co-defendant [James Smith], and a fourth man allegedly named "Hugo" — broke into Gall and Swafford's apartment while they were sleeping. Gall knew all of the men except for Hugo. (The police never located or charged Hugo.)

-1-

> Gall encountered Hugo at the top of the stairs; Gall lunged at Hugo, and the two tumbled down the stairs and over the banister. Once Gall landed at the bottom of the stairs, all four men began kicking Gall in the face and head. Hugo then held Gall down while the other three men took items from the apartment and put them in a vehicle outside. At one point when Gall tried to get up, Hugo hit Gall in the face with a hammer.

*Erdmann v. State*, No. A-12402, 2018 WL 3933550, at *1 (Alaska Ct. App. Aug. 15, 2018).

Tapia-Ruiz resolved her case prior to trial. The remaining defendants, including Erdmann, proceeded to a joint jury trial on February 3, 2015. At trial, the prosecution presented, among other witnesses, Gall and Swafford. Before Gall testified, Erdmann's counsel informed the trial court that he intended to cross-examine Gall about his own criminal activity and asked the court to advise Gall of his rights against self-incrimination. The court appointed counsel for both Gall and Swafford and determined that they both had a valid Fifth Amendment privilege. The State then offered Gall and Swafford immunity for crimes committed prior to trial, with an express requirement that Gall and Swafford would be expected "to answer all questions [at trial] completely and truthfully."

On direct examination, Gall testified that he had been clean for 23 months. Gall was still under direct examination at the end of the day on a Friday, and his testimony was continued the following Monday. During the intervening weekend, the police were called to the Anchorage hotel room where Gall and Swafford were staying and observed that Gall and Swafford appeared to be under the influence of drugs. After the trial resumed, Gall admitted on cross-examination that he had lied about being clean for 23 months, stating that he had not been "strung out" in 23 months but that he had relapsed four or five times in that period. Gall otherwise acknowledged his criminal history, including prior convictions for false statement and a felony drug offense, as well as undischarged conduct including drug distribution and unlawfully possessing a firearm.

When the presentation of evidence concluded, counsel for Taylor Smith moved for a judgment of acquittal, arguing that the testimony of Gall and Swafford "lack[ed] any credibility whatsoever." Erdmann's counsel made a similar motion, although he stated that it was made

solely for the purpose of preserving his right to file a later motion for a new trial. The trial court denied the motions.

At the conclusion of trial, the jury found all three defendants guilty as charged. Erdmann moved for a new trial, enumerating various reasons why he believed that Gall and Swafford lacked credibility. The trial court denied the motion.

Through counsel, Erdmann appealed his conviction, challenging the trial court's failure to grant a new trial on the ground that the jury's verdict was against the weight of the evidence. The Alaska Court of Appeal unanimously affirmed the judgment against Erdmann in a reasoned, unpublished memorandum decision issued on August 15, 2018. *Erdmann*, 2018 WL 3933550, at *2. Erdmann petitioned for hearing in the Alaska Supreme Court, which was summarily denied on December 5, 2018.

Erdmann timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court dated October 1, 2019. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2). Briefing is now complete, and the Petition is ripe for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Erdmann avers:

> I was convicted based on tainted testimony and lies.
> Both witnesses were caught lying on the stand when testifying against me.
> I have newly discovered evidence that contradicts witnesses['] statements/ testimony against me while under oath.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

-4-

Case 3:19-cv-00287-JKS   Document 11   Filed 04/01/20   Page 4 of 10

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Erdmann has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

## IV. DISCUSSION

The thrust of Erdmann's Petition is that he was wrongfully convicted based on the untruthful testimony of Gall and Swafford. On direct appeal, Erdmann alleged that their testimony was "so unreliable that the trial court should have ordered a new trial" and that reversal was warranted because the jury's verdict was against the weight of the evidence. *Erdmann*, 2018 WL 3933550, at *1. Construing the statements in Erdmann's *pro se* Petition liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), it appears that Erdmann re-raises here his direct appeal claim challenging his conviction in light of the unreliability of Gall's and Swafford's testimony.

As an initial matter, Respondent urges the Court to dismiss Gall's claim as unexhausted and procedurally defaulted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. To satisfy the "fairly present" requirement, the petitioner must present his or her federal claim to "each appropriate court (including a state supreme court with powers of discretionary review)" so that the each court is alerted to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam). In Alaska, this means that claims must first be presented to the Alaska Superior Court. If the petitioner disagrees with that result, the claim should be raised to the Alaska Court of Appeals, and if he disagrees with that result, the claim should be raised in a petition for hearing to the Alaska Supreme Court.

In the Ninth Circuit, a petitioner must make the federal basis of the claim explicit either by referencing specific provisions of the federal Constitution or statutes or by citing to federal case law. *Robinson v. Schiro*, 595 F.3d 1086, 1101 (9th Cir. 2010). Mere similarity of claims between a state law claim and a federal law claim is insufficient for exhaustion purposes. *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). In order to present the substance of a claim to a state court, the petitioner must reference a specific federal constitutional provision as well as a statement of facts that entitle the petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Once the petitioner fairly presents the claim to the state courts, exhaustion is satisfied even if the state court's decision is silent on the particular claim. *See Dye v. Hofbauer*, 546 U.S. 1, 3, (2005) (per curiam).

As Respondent notes, Erdmann cited only state law in support of his argument on direct appeal to the Alaska Court of Appeals challenging the verdict as against the weight of the evidence and cited only one federal case in his petition for hearing to the Alaska Supreme Court. The Court notes, however, that least one federal circuit court has suggested that presenting a state-law-based weight of the evidence claim without more also raises a federal sufficiency of the evidence claim for purposes of habeas exhaustion. *See Liberta v. Kelly*, 839 F.2d 77, 80 n.1 (2d Cir. 1988); *see also Wilson v. Heath*, 938 F. Supp. 2d 278, 290 (N.D.N.Y. 2013) (noting that "the Second Circuit [in *Liberta*] has suggested that a petitioner who raises a state law weight of the evidence claim on direct appeal has exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes"). In an abundance of caution, the Court declines to dismiss Erdmann's Petition solely on procedural grounds and will instead consider whether Erdmann's conviction is supported by legally-sufficient evidence under the appropriate federal standard. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the Alaska court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not

affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id.* Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the

-8-

state court decision was 'objectively unreasonable.'" *Id.* (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Erdmann argues in his Petition that Gall and Swafford were not credible and their testimony was inherently unreliable. But all of the evidence in support of his claim was before the jury for its assessment.[1] This Court is precluded from re-weighing the evidence or re-assessing witness credibility. *Schlup*, 513 U.S at 330; *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004). It is also well-settled under federal law that the testimony of even a single witness is sufficient to support a conviction under the *Jackson* standard. *See, e.g.*, *Bruce*, 376 F.3d at 957-58 (testimony of single witness sufficient to uphold conviction under Jackson); *United States v. McClendon*, 782 F.2d 785, 790 (9th Cir. 1986). As the Alaska Court of Appeal explained in rejecting Erdmann's challenge on direct appeal:

> While there were certainly bases for impeaching the testimony of Gall and Swafford at trial, Gall and Swafford consistently identified Erdmann, Smith, and a third co-defendant — people Gall considered friends and family — as participants in the burglary and robbery. The evidence showed that the door to Gall and Swafford's apartment was kicked in, and there was no dispute at trial that Gall was seriously injured during the events that followed. When the responding officer apprehended the suspects' vehicle near the apartment, the vehicle was full of property belonging to Gall and Swafford, and the officer recognized and positively identified Erdmann and Smith as they ran from the vehicle.
> Having reviewed the evidence presented at trial, we conclude that the trial court did not abuse its discretion in denying Erdmann and Smith's motions for a new trial.

*Erdmann*, 2018 WL 3933550, at *1 (footnotes omitted).

Although it might have been possible to draw a different inference from other evidence and in light of the admitted credibility issues of Gall and Swafford, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Erdmann bears

---

[1] Although Erdmann refers to newly discovered evidence in his Petition, at no place does he identify new reliable evidence, let alone demonstrate that it establishes his factual innocence in support of reversing his conviction. At best, Erdmann appears to be referring to further evidence impeaching Gall's and Swafford's credibility, which is not sufficient to show actual innocence. *See Sistrunk v. Armenakis*, 292 F.3d 669, 677 (9th Cir. 2002) (en banc) (newly presented evidence "certainly provides a basis for some degree of impeachment of the prosecution's main witnesses" but did not "fundamentally call into question the reliability of [petitioner's] conviction").

the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have believed the prosecution's theory of the case, especially considering the double deference owed under Jackson and AEDPA. *See Valdez v. Clark*, 587 F. App'x 414, 414-25 (9th Cir. 2014). Erdmann is therefore not entitled to federal habeas relief.

## V. CONCLUSION AND ORDER

Erdmann is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 31, 2020.

s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
